EWING, *Appellant*, v. SHANNAHAN.

Division One, December 22, 1892.

1. **Trust Deed:** WORD "HEIRS:" FEE SIMPLE: STATUTE. Although a deed of trust does not contain the word "heirs," it will vest the fee simple title in the trustee under the provision of the statute that the term heirs or other words of inheritance shall not be necessary to create or convey an estate in fee simple. (Revised Statutes, 1879, sec. 3939.)

2. ———: ———: ———. Where land is conveyed to a trustee with power to sell and convey the fee simple, but without the use of the word "heirs," an estate in fee simple is vested in the trustee without regard to the foregoing statute.

3. ———: "LEGAL REPRESENTATIVES." A deed of land in trust for the benefit of the donor provided that on the donor's death the property should descend to his "legal representatives," but a certain person named should inherit no part thereof. No power of revoking the trust was reserved. *Held*, that the term "legal representatives" meant the "heirs" of the donor.

4. ———: ———: BENEFICIARIES. Such representatives with the donor were the beneficiaries of the trust.

5. ———: REVOCATION OF TRUST. A quitclaim deed from the trustee to the donor would not revoke the trust, though made solely for that purpose, since a completed trust without reservation of power to revoke can be revoked only by the consent of all the beneficiaries.

6. **Trustee:** CESTUI QUE TRUST: LIMITATION. Where a trustee who has the legal title to trust property permits his right to bring eject-ment therefor to become barred by limitation, the *cestui que trust* is also barred, though a minor.

7. **Trustee, Death of:** LEGAL TITLE. The legal title passes on the death of the trustee to his heirs, and it becomes their duty to care for the trust property or to have a new trustee appointed.

8. **Statute of Limitations:** PURCHASER WITH NOTICE OF TRUST. The fact that one buys trust property with knowledge of the trust does not prevent the statute of limitations from running against the trustee and the beneficiaries.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*D. Castleman Webb, Andrew Mackay, Jr.,* and *Frederick Ullmann* for appellant.

(1) The court erred in finding for the defend-ant and against the plaintiff, because by the trust deed made in December, 1863, there was created such a trust and such a vested estate as it was not in the power of the parties to that deed to revoke or destroy by any act or conveyance, so far as the children of Geo. W. Ewing, Jr., are concerned, and that consequently the deed of the father to the son, of March, 1866, by which it was attempted to re-convey the property back to George W. Ewing, Jr., was and is of no effect so far as plaintiff is concerned. 1 Perry on Trusts, sec. 315; *Locke v. Barbour,* 62 Ind. 585; *North v. Philbrook,* 34 Me. 537; *Neilson v. Lagow,* 12 How. 106; *Cleveland v. Hallett,* 6 Cush. 403; *Farquharson v. Eichelberger,* 15 Md. 63; *Rutledge v. Smith,* 1 Busbee Eq. (N. C.) 283; *Fisher v. Fields,* 10 Johns. 505; *Stearns v. Palmer,* 10 Mt. 32; *Gould v. Lamb,* 11 Met. 84; *Morgan v. Moore,* 3 Gray, 319; *Villars v. Beaumont,* 1 Vern. 99; *Ellison v. Ellison,* 6 Ves. 656; *Keys v. Carleton,* 141 Mass. 45;

*Isham v. Delaware*, 11 N. J. Eq. 227; *Gaylord v. Lafayette*, 115 Ind. 429; *Wright v. Moody*, 116 Ind. 179; *Bowman v. Long*, 89 Ill. 19; *Welch v. Allen*, 21 Wend. 147; *Ware v. Richardson*, 3 Md. 505; *Owen v. Cooper*, 46 Ind. 524; 2 Washburn on Real Property [4 Ed.] sec. 2, p. 507; *Hildreth v. Elliott*, 8 Pick. 296; 4 Kent's Commentaries, 353; Revised Statutes, 1889, sec. 8834. (2) The statute of limitations does not operate as a bar to the plaintiff's right of recovery in this action, plaintiff being a minor when possession was taken by defendant, and having brought this suit within three years after attaining his majority. 2 Revised Statutes, 1889, sec. 6767; Wood on Limitations of Actions [1 Ed.] sec. 208; *Fisk v. Wilson*, 15 Tex. 430; *Dyer v. Wittler*, 89 Mo. 97; *Harris v. Ross*, 86 Mo. 89; *Gudgell v. Lydings*, Ky. Ct. of App. 10 S. W. Rep. 466.

*E. T. Farish* for respondent.

(1) The case is entirely devoid of any equity on the part of the plaintiff. If George W. Ewing, the grandfather of the plaintiff, through nonfeasance omitted to carry the trust into execution, or through misfeasance disobeyed the directions of the trust, he rendered himself liable to the beneficiaries, whose rights were thus violated. Pomeroy's Equity Jurisprudence, sec. 1069. (2) George W. Ewing, Sr., under the conveyance of 1863, had a right to sell the property in question to Shannahan, and receiving the proceeds thereof turn the same over to George W. Ewing, Jr., and, having a right to do so directly, he could do so indirectly, and this he did by conveying the property back to George W. Ewing, Jr., and allowing him to make said conveyance and receive such purchase money. And this was done, and therefore

the deed of George W. Ewing back to George W.
Ewing, Jr., and the deed of the latter to Shannahan
may be considered as one deed and just the same as
if George W. Ewing, Sr., had joined in the deed of
George W. Ewing, Jr., to Shannahan. (3) But if
the deed of 1866 made by George W. Ewing, Sr.,
back to George W. Ewing, Jr., was inoperative to
pass the title to the property in question, then the
title remained in him and his heirs as trustees under
the deed of 1863, and from and after 1867, when
Shannahan purchased, the statute of limitations
began to run. Having begun to run, nothing stopped
it. *Cunningham v. Snow*, 82 Mo. 583. The only
*cestui que trust* in this conveyance of 1863 was the
grantor, George W. Ewing, Jr. His heirs were not
remaindermen, but only entitled as his legal repre-
sentatives by descent, and a title by limitation that
would bar George Ewing, Jr., would bar them. 2
Washburn on Real Property, p. 493. (4) If a trustee,
in whom is the right of action, allows the statute of
limitations to run against him so as to bar his
action, the action is also barred against the *cestui
que trust*. Washburn on Real Property [5 Ed.] pp.
176, 536; *Gass v. Singleton*, 2 Head, 67; *Bryan v.
Weems*, 29 Ala. 423.

BLACK, J.—This is an action of ejectment for a
lot in the city of St. Louis. The answer is a general
denial and a plea of the statute of limitations. Both
parties claim under William G. Ewing.

The plaintiff put in evidence a deed, the mate-
rial parts of which are in these words: "This inden-
ture witnesseth that George W. Ewing, Jr., a devisee
of William G. Ewing, * * * in consideration of
$600 and other good and sufficient considerations,
doth by these presents give, grant, bargain and sell

to George W. Ewing, father of George W. Ewing, Junior, the following described real estate,"—then follows a description of the lot in question and other lots and lands in this state and in the states of Indiana, Illinois and Minnesota—"to have and to hold the same to the said George W. Ewing in trust for the uses and purposes following to-wit:

"*First.* The said George W. Ewing, trustee as aforesaid, shall sell and convey all such part or parts of the real estate hereby conveyed to him as he may deem most advantageous for the interests of the trust hereby created and the proceeds thereof to reinvest for the same purpose for which this trust is created, or to expend the same in improving such of the property hereby conveyed as the said trustee shall deem most advisable, and for the purpose of creating an income therefrom.

"*Second.* That of the income and profits arising under this trust, a reasonable sum, such as the said trustee shall deem to be sufficient, shall be expended in the maintenance of the said George W. Ewing, Jr., and the necessary expenses shall be expended for the benefit of the trust, when, and at such times, as the trustee shall think best.

"*Third.* Should the said trustee die before his said ward, that Jesse Holliday, of San Francisco, California, or, upon his refusal to act, such person as the court of common pleas of Allen county, Indiana, shall appoint, shall take up and continue this trust.

"*Fourth.* That, upon the death of the said George W. Ewing Jr., the property hereby placed in trust shall descend to the legal representatives of the said George W. Ewing, Jr., provided, however, that William G. Ewing, Jr., the adopted son of William G. Ewing, deceased, shall, under no circumstances whatever, inherit or be entitled to any part or parcel thereof."

This deed bears date the thirty-first of December, 1863, and, on the first of March, 1866, George W. Ewing, Sr., executed to George W. Ewing, Jr., a quitclaim deed of that date. This quitclaim deed refers to the deed of trust and then states that it is now desirable that the trust be terminated, and to that end the unsold property described in the deed of trust is conveyed back to the donor. Afterwards, on the fifteenth of July, 1867, George W. Ewing, Jr., and his wife, by their warranty deed, conveyed this lot to the defendant for the consideration of $1,800, that being its then full value. Defendant took possession under this deed and has made improvements on the property at a cost of $20,000, believing he had a perfect title. George W. Ewing, Jr., died on the second of December, 1872, leaving a son, the plaintiff in this case, as his only heir at law. Plaintiff was born on the sixth of September, 1866. This suit was commenced on the thirteenth of March, 1889.

On a trial without a jury the circuit court gave judgment for defendant.

1. Although the deed from George W. Ewing, Jr., conveying the property to his father, George W. Ewing, Sr., in trust, does not use the word *heirs*, still the deed vested in the trustee the fee simple title for the purposes specified, for under our statute the word *heirs* or other words of inheritance are not necessary to convey an estate in fee simple. Such an estate passes by the deed without the use of words of inheritance, unless the intent to pass a less estate is expressly stated or appears by necessary implication. Revised Statutes, 1879, sec. 3939; *McCullock v. Holmes*, 111 Mo. 445. Here no intent to pass a less estate appears.

But without regard to this statute the deed in question would pass a fee simple estate to the trustee,

for, though in general, in the absence of such a statute, words of inheritance are necessary to pass a fee, yet there are exceptions to the rule.    Thus, where lands are devised or conveyed to a trustee without the use of the word *heirs*, and it is necessary that the trustee should take an estate of inheritance in order to enable him to carry out the intention of the donor, he will take an estate in fee simple.   1 Perry on Trusts, sec. 315; *Fisher v. Fields*, 10 Johns. 494; *Cleveland v. Hallett*, 6 Cush. 403.    Where, as in the case now in hand, the property is conveyed to a trustee with power to sell and convey the fee simple, an estate in fee simple is invested in the trustee.    *North v. Philbrook*, 34 Me. 533; *Neilson v. Lagow*, 12 How. 99; *Gould v. Lamb*, 11 Met. 84.    If, however, a less estate than a fee is clearly given, courts cannot enlarge it by construction; but here no intention is manifested to give a less estate.

2. A further preliminary question arises, and that is what meaning is to be given to the term · *legal representatives* in the fourth of the paragraphs specifying the trusts, whereby it is provided that, upon the death of the said George W. Ewing, Jr., the donor, the property placed in the hands of the trustee shall descend to the legal representatives of him, the said donor.    The term *legal representatives* is often used in statutes and instruments of writing in a broad sense, so as to include all persons who stand in the place of and represent the interest of another either by his act or by operation of law, and in such cases it includes heirs and assigns. *Wear v. Bryant*, 5 Mo. 147; *Ins. Co. v. Armstrong*, 117 U. S. 597; *Beall v. Succession of Elder*, 34 La. Ann. 1098; *Johnson v. Ames*, 11 Pick. 173. · But the usual and ordinary meaning is "executors and administrators."    *Cox v. Curwen*, 118 Mass. 198; *Lodge v. Weld*, 139 Mass. 499; *Bowman v. Long*, 89 Ill. 20; *Halsey v. Patterson*, 37 N. J. Eq. 448.    The term may

and often does mean *heirs* (*Bowman v. Long, supra; Farnam v. Farnam,* 53 Conn. 290), or next of kin. *Jennings v. Gallimore,* 3 Ves. Jun. 146.

Sufficient has been said to show that we must look to the context to ascertain the meaning of the term as used in this deed. Doing this we find the donor of the trust reserved no power to dispose of the property or any interest therein. He has not even reserved the power of revoking the trust. It cannot, therefore, be said that the words *legal representatives* mean or even include assigns or persons succeeding by any act of his, for he is shorn of all power to create a successor by assignment, deed or otherwise. This being so the words cannot mean or include assigns or grantees. The creator of the trust is here speaking of lands, of real estate, and says that upon his death the property shall *descend* to his legal representatives; and he then goes on to say that the adopted son of William G. Ewing shall in no event *inherit* or be entitled to any part of the property. The evident and manifest meaning of the trust as declared is that upon the death of the donor the remaining property shall pass to and become the property of those persons upon whom the law would cast the property had the donor died seized of it. The term, therefore, means *heirs* as here used.

3. The question then arises whether the quitclaim deed from the trustee back to George W. Ewing, Jr., the donor, had the effect to revoke the trust. That such was its object is clear, for the deed so declares.

As preliminary to the disposition of this question it is to be observed that the trust is well and properly declared and that too in the most formal way, for the deed of trust conveys a fee simple to the trustee, and then specifies the purposes for which the trustee takes and holds the property. There is here a perfect, completed, executed trust; and this being so it is immate-

rial whether the trust is to be deemed a voluntary one or made upon a valuable consideration, for being a perfect and completed trust it must be enforced in either event. *Leeper v. Taylor*, 111 Mo. 312. The trusts declared are: To sell and convey as the trustee shall deem best; to reinvest the proceeds on the same trusts or apply them in improving the other property; to apply the income and profits to the extent that the trustee shall deem sufficient to the maintenance of the donor. At his death the active trust ceases and the property passes to those persons who answer the description of heirs of the donor. It must follow that such persons are beneficiaries of the trust as well as the donor himself. No power of revocation is reserved by the donor.

Now, a completed trust without reservation of power of revocation can only be revoked by the consent of all of the beneficiaries. Says Perry: "A trust once created and accepted without reservation of power can only be revoked by the full consent of all parties in interest; if any of the parties are not in being, or are not *sui juris*, it cannot be revoked at all." 1 Perry on Trusts [4 Ed.] sec. 104. Applying this principle it must be held that the quitclaim deed did not revoke the trust. As to the plaintiff it was and is a nullity. Indeed it has been held by the supreme court of *Indiana* and of *Minnesota* that the very quitclaim deed now in question did not terminate or destroy the trust, and that it was out of the power of the trustee or donor or both combined to revoke or destroy the trust. *Ewing v. Warner*, 47 Minn. 446; *Ewing v. Jones*, 29 N. E. Rep. 1057.

4. It follows from what has been said that the plaintiff is entitled to recover, unless barred by the statute of limitations; and this presents the most difficult question in this case.

The trust it will be remembered was created by the deed from George W. Ewing, Jr., to George W. Ewing, Sr., dated the thirty-first of December, 1863; and the attempted deed of revocation bears date March 1, 1866.   The trustee died in May of that year, and the plaintiff was born the sixth of September of the same year.   Geo. W. Ewing, Jr., the creator of the trust, conveyed this lot to the defendant the fifteenth of July, 1867, and died in December, 1872.   This suit was commenced the thirteenth of September, 1889, two years and a few days after the plaintiff attained the age of twenty-one.

No right of entry accrued to the plaintiff until the death of his father, which was in 1872.   He was at that time a minor, and, as he brought this action within three years after the removal of the disability of infancy, he is not barred, unless he is barred because an action by the trustee would be barred.   While there was some doubt at one time, the law is now well settled, both in England and in this country, that the rule that the statute of limitations does not bar a trust estate holds only as between *cestui que trust* and trustee, and not between *cestui que trust* and trustee on the one side and strangers on the other side. Therefore, where a *cestui que trust* and his trustee are both out of possession for the time limited, the party in possession has a good bar against them both. Where the trustee is barred so is the *cestui*.   2 Perry on Trusts [4 Ed.] sec. 858; Hill on Trustees [4 Am. Ed.] pp. 413, 414; *Herndon v. Pratt*, 6 Jones Eq. 327; *Clayton v. Cagle*, 97 N. C. 300; *Wooldridge v. Bank*, 1 Sneed, 297; *Merriam v. Hassam*, 14 Allen, 516; *Smilie v. Biffle*, 2 Barr, 52.

Perry says in the section just mentioned:   "But it would seem that, if the *cestui que trust* is entitled to an interest in remainder only, the statutory bar ought

not to begin to run against him until his interest falls into a right to the possession of the beneficial or equitable interest," citing *Parker v. Hall*, 2 Head, 641. Hill says it seems somewhat doubtful how far the infancy of the *cestui que trust* will prevent the adverse possession of a stranger from operating as a bar to their claims, but he seems to think the true doctrine of the English courts is that a fine and non-claim should bar the *cestui que trust* though an infant. Wood says: "When the legal title of property is vested in a trustee who can sue for it, and fails to do so within the statutory period, an infant *cestui* who has only an equitable interest will also be barred; but the rule is otherwise when the legal title is vested in the infant, or cast upon him by operation of law." 2 Wood on Limitation of Actions [2 Ed.] sec. 208.

These extracts from the text books disclose a want of any well defined rule, and it is deemed best to examine the cases themselves. In *Parker v. Hall*, *supra*, a guardian of minor children purchased certain slaves with the money of his wards and took a bill of sale in his own name as such guardian, which was duly registered. He sold the slaves while his wards were yet minors and died insolvent. Thereafter the wards, one being then a minor, filed a bill against the purchaser for possession of the slaves. The court held that the rule that when the trustee is barred all the beneficiaries are also barred, did not apply, because the trustee, the holder of the legal estate, had estopped himself from suing by making a bill of sale to the purchaser, and because he had united with the purchaser in a breach of the trust. And the same court held that where the trustee took but a life estate, the statute of limitations would not run as against the remaindermen until the death of the life tenant. *Belote v. White*, 2 Head, 703. But in

*Williams v. Otey,* 8 Humph. 563, it was said: "When-ever a trustee having the legal title neglects to sue until he is barred by the statute of limitations, the *cestui que trust* is likewise barred, though an infant under twenty-one years of age."

In *Bull v. Walker* 71 Ga. 195, the will gave to Susan P. Howard certain real estate for her benefit for life, and then to her children, and then appointed a trustee to take and hold the property for her. It was held that the statute of limitations did not begin to run against the children until the death of their mother, the life tenant, but it was also held that the trustee was simply a trustee for the life tenant, and that his only duty was to protect the life estate from sale for debts of the life tenant. *Gudgell v. Tydings,* 10 S. W. Rep. 466, to which we are cited by the plaintiff, is not essentially different from the case last mentioned. But in *Wingfield v. Virgin,* 51 Ga. 139, the title was vested in a trustee, and it was held that, the trustee being barred, the beneficiaries, though infants, were barred. The facts of that case were these: Weems and wife executed a deed conveying the land to Wingfield in trust for certain purposes, one of which was to hold the same for the sole benefit of the wife of Weems and her children, born and to be born, the income to be applied to the support of the family and not subject to the debts of Weems. The trustee and Weems and wife executed deeds conveying the property to Wylie, who took and held possession. The children of Weems and wife, being still minors, filed a bill against those claiming under Wylie to reestablish the trust, and the defendant set up, among other things, the statute of limitations. The court said: "The distinction is this, when the legal title to the property is vested in a trustee who can sue for it, and fails to do so within the time

prescribed by law, and his right of action is barred, the infants, *cestui que trusts*, who have only an *equitable* interest in the property, will also be barred; but, when the *legal* title to the property is vested in the infants or cast upon them by operation of law, then the statute does not run against them during their infancy. In the case before us, the legal title to the property in controversy was never in complainants, and could not be until the death of Weems, their father; and, therefore, Wylie's title by prescription was good as against Wingfield, the trustee, who had the legal title to the property, and, he being barred from recovering the possession of it, the complainants, his infants, *cestui que trusts*, are also barred.'' That court has held in a number of cases that, where the title to land was in a trustee, and he failed to sue until his right of action was barred, the beneficiaries were barred, though infants. *Brady v. Walters*, 55 Ga. 25; *Knorr, Adm'r, v. Raymond*, 73 Ga. 749, and cases cited.

In *Molton v. Henderson*, 62 Ala. 426, lands were devised to trustees to hold for the benefit of a *non compos*. The lands were sold by order of a probate court at the instance of a guardian of the *non compos*, who filed a bill, by his next friend, to subject the land to the trust created by the will. The court held that the guardian's sale was void, but that the purchaser acquired color of title. After stating the general rule to be, that if a trustee delays the assertion of his rights until the statute affects a bar against him the *cestui que trust* will also be barred, and, after reviewing various cases, the court says: ''On principle and authority, therefore, we must say the fact that the appellee was *non compos mentis*, and yet so remains, cannot prevent the operation of the general rule to which we have referred. If his trustees have been negligent in assert-

ing the legal title, the law affords him remedies against them which are without the operation of the statute. These remedies, if he has been wronged, he must pursue.''

In the case now in hand the plaintiff took an equitable contingent remainder by force and effect of the deed of trust. Until the death of the donor, the entire legal title, a title in fee simple, was vested in the trustee. It was the duty of the trustee to protect the title for those who should take upon the death of the donor as well as for the donor during his life. To this end the entire legal title was vested in the trustee, and the right of possession was in him. As the trustee held the legal fee simple title and the right of possession for all of the beneficiaries, he was the proper person to sue for possession; and we think the case comes within the rule, that, where the trustee is barred by lapse of time, the beneficiaries are also barred, and that too, though the beneficiaries are minors. That which bars the legal title here bars the equitable title. The acceptance of a trust like this is not a meaningless affair, and, if the trustee has made breach of the trust and wronged the plaintiff, the remedy is against the trustee. The statute of limitations is one of repose, and should be applied in this case.

It is true the trustee died before George W. Ewing, Jr., executed the deed to the defendant; and it does not appear that Jesse Holliday ever accepted the trust or that a new trustee was ever appointed by the court as provided in the third clause of the deed of trust. But the legal title passed to the heirs of the trustee, and it does not appear that they were laboring under any disability. It became their duty to care for the property or have a new trustee appointed.

Our conclusion is that the statute began to run against both the legal and equitable title when defend-

ant took possession; that the legal and equitable titles were both barred by ten years' adverse possession, and this too though the owner of the equitable title was, during all that time, an infant. That defendant's possession has been adverse, and that too for a period of twenty years, cannot be questioned.

It is suggested that defendant purchased with knowledge of the trust, because the trust deed was recorded, and that he did purchase with constructive notice must be conceded. The fact, however, that he had such notice, did not prevent the statute of limitations from running. If that were so, the statute would cease to be one of repose. The statute will run in favor of even a wrongdoer. There can be no claim that defendant was guilty of any fraud. On the contrary, the proof shows beyond all doubt that he paid full value for the property, believing he had acquired a perfect title, and with that belief made improvements thereon to the amount of $20,000.

The judgment is affirmed, BARCLAY, J., not sitting. The other judges concur.

