432 P.2d 420

**Màrietta JONES, Kenneth Jones, and Stanley John Jones, minor children, by and through Philip E. Dolan, court appointed guardian of the Estates of Marietta Jones, Kenneth Jones and Stanley John Jones, minors, Plaintiffs-Appellants,**

v.

**STATE of Idaho, Dan Deshon and Teresa Deshon, husband and wife, W. A. Nieman, and Maybelle Nieman, husband and wife, Glenn Bandelin and Dora Bandelin, husband and wife, Fred Schedler and Iris Schedler, husband and wife, Malcom P. McKinnon and Margaret McKinnon, husband and wife, Fred Kennedy and Lotta Kennedy, husband and wife, Marjorie Payne, Kenneth Carey, Vernon Carey, James W. Carey, G. F. McClelland and Irene McClelland, husband and wife, Sandpoint Land Development Co., Inc., a corporation, and George Gregory and Genevieve Gregory, husband and wife, Defendants-Respondents.**

**No. 9760.**

Supreme Court of Idaho.

July 27, 1967.

Rehearing Denied Oct. 26, 1967.

Stephen Bistline, Sandpoint, Philip E. Dolan, Coeur d'Alene, for appellants.

Richards, Haga & Eberle and Faber F. Tway, Boise, and Hardy C. Lyons, Sandpoint, for respondents.

SMITH, Justice.

This action was dismissed with prejudice as to the named respondents, George and Genevieve Gregory, husband and wife, they having disclaimed any interest in the subject real property, although they are parties to this appeal. The action was dismissed without prejudice as to the named respondent, Sandpoint Land and Development Co., Inc., a corporation, it not having been served with process; it is not a party to this appeal.

Appellants brought this action seeking to quiet title in them to certain real property sometimes referred to as the McGhee and Gregory Tracts.

The McGhee Tract, now Lot 7, Block 21 of Weil's Third Addition to Sandpoint, is situate in the SE¼ SE¼ of Section 22, Township 57 North, Range 3, East of the Boise Meridian, in Bonner County, Idaho.

The remainder of the property, referred to as the Gregory Tract, is situate in the SE¼ SE¼ of Section 22, the W½ SW¼ of Section 23, and in U.S. Lot 1 of Section 26, Township 57 North, Range 2, East of the Boise Meridian, in Bonner County, Idaho.

Prior to May 1947, Jack Jones owned the fee simple title to the McGhee Tract under a duly recorded deed of conveyance.

The Gregorys had contracted to sell, and the Joneses to purchase, the Gregory Tract under an agreement executed in May 1946. The contract was not acknowledged by Genevieve Gregory as required by I.C. § 32–912, nor recorded in the office of the Bonner County recorder. The contract required the Joneses to pay a purchase price of $7,000.00 as follows: $2,000.00 as a down payment, and the balance at the rate of $40.00 per month beginning June 2, 1946, with interest figured at the rate of 6% per annum; time of payment constituted the essence of the contract.

Jack and Veneta Jones were divorced May 19, 1946, evidenced by decree of the Bonner County district court. The decree operated to transfer Jack Jones' interest in the Gregory and McGhee Tracts to Veneta Jones as trustee for the three minor children of the marriage, whose names appear herein as appellants. The judicially created trust permitted Veneta Jones as trustee, to convey the trust assets, but imposed limitations upon that power of sale:

"[I]n the event of an offer for purchase [of the] property, before a sale is made, the Court is to be advised concerning same and the Court shall determine the terms and conditions upon which said property is to be sold, and before the same shall be final shall approve the sale of said property, and * * * Veneta Jones shall comply with all orders that the Court may make in reference to the sale or contract of sale of any of said real estate, also as to the disposition of the proceeds of said sale."

The divorce decree, which affected the title to the Tracts within the meaning of I.C.

§ 31–2407, does not appear in the Bonner County record index of deeds, grants and transfers, but does appear in the county's record index for transcripts of judgment. See I.C. §§ 31–2404(1) and 31–2404(17).

On a previous appeal, 85 Idaho 135, 376 P.2d 361, 3 A.L.R.3d 1158 (1961), this court considered the validity of the trust created by the district court's decree, and ruled that such a trust for the purpose of subjecting property to the support and education of the minor children was within the jurisdiction and statutory authority of the district court.

Following the Jones' divorce title to the Gregory and McGhee Tracts, by mesne conveyances, became vested in respondents. The title sequence will be related separately as to each tract.

*The Gregory Tract:* During 1947 the Joneses, as purchasers, failed to make required monthly payments to the Gregorys as required by the sale and purchase contract. By October 1947, the total deficiency on principal was $240.00. The children, in March 1947, were enrolled in the Lewiston Children's Home; Veneta vacated the property shortly thereafter. George Gregory, who knew the Joneses personally and maintained friendly relations with the family, consulted Mrs. Jones concerning her deficiency in payments and learned of her inability to continue under the contract. With that knowledge, Gregory endeavored to protect his interest as seller, and the Jones' interest as purchasers, by re-selling the tract to a third party.

The circumstances of her divorce, poverty, and concern for the children aggravated Veneta Jones' physical and emotional condition. Judge Boughton of the Bonner County district court apprehended that Mrs. Jones' declining health necessitated additional protection of the trust and the minor beneficiaries. On October 16, 1947, Judge Boughton removed Veneta Jones as trustee, by an order reading:

"It appearing to the Court that some of the property described in the decree in the above entitled case is about to be sold and it further appearing to the Court that the interest of the minor children, to-wit: Marietta Jones, Kenneth Edwin Jones and Stanley John Jones, should be protected and that any monies due or to become due under any contract of sale or for the sale of any property should be deposited in trust for the use and benefit of said children; and it appearing further to the Court that Veneta Jones, at the present time, is not the proper person to act as trustee for said children, now therefore it is,

"ORDERED, that Tom Jones, brother of the defendant, in said action be and is hereby appointed trustee of all funds in trust for the use and benefit of said children and that all monies deposited with any escrow holder shall be deposited to the credit of Tom Jones, trustee, for the use and benefit of Marietta Jones, Kenneth Edwin Jones and Stanley John Jones, and it is,

"FURTHER ORDERED, that any disbursements from said fund by said trustee shall be subject to the approval of the Court."

November 20, 1947, the Gregorys contracted to sell the Gregory Tract and other property for $6,250.00 to the Rickards. Judge Boughton of the Bonner County district court executed his approval of the transaction beneath the signatures of the parties. Tom Jones as trustee acknowledged receipt of all funds due under the divorce decree and order appointing him trustee, by an instrument of receipt filed with the district court February 21, 1948. A full accounting of the Gregory-Rickard transaction was subsequently filed with the district court.

A quitclaim deed executed by Veneta Jones, dated November 21, 1947, released her claims in the Gregory Tract to her contract purchasers, the Gregorys. That deed was duly recorded December 1, 1947, in the office of the Bonner County recorder.

The Rickards deeded the Gregory Tract to Robert and Elaine Niemann in January

1948. In 1949, the Niemanns conveyed by separate deeds their entire interest in the Gregory Tract to the McKinnons and the Deshons. Respondents Fred and Iris Schedler derived their title from the McKinnons, and respondents Bandelin, Nieman, and Kennedy derived theirs from the Deshons.

*The McGhee Tract*: The divorce decree of May 1947 effected transfer of title to this property to Veneta Jones in trust for the Jones children. On October 14, 1947, the day prior to the substitution of Tom Jones for Veneta Jones as trustee, Veneta deeded the property to the Spurgeons. The Spurgeons deeded it to James E. Carey on February 13, 1951. James E. Carey contracted to sell to the Skibes, and the Skibes assigned their equity to respondents, Gerald and Irene McClelland. The equity of James E. Carey, upon his death, became vested in Carey's heirs, the respondents Marjorie Payne, Kenneth Carey, Vernon Carey and James W. Carey, evidenced by a probate court decree.

After trial upon the merits, the trial court made findings of fact and conclusions of law in favor of the respondents now holding record title to the Gregory and McGhee Tracts. The judgment entered thereon rested upon alternative bases: first, the respondents holding record title to the Gregory and McGhee Tracts obtained their titles in good faith, without notice of appellants' claims, and for valid consideration; and second, that the present holders of title, and their predecessors in interest, perfected valid titles by adverse possession of the tracts for the prescriptive period. If the trial court is correct upon either theory, the judgment must be affirmed. Bistline v. Eberle, 88 Idaho 473, 401 P.2d 555 (1965); Evans v. Continental Life and Accident Company, 88 Idaho 254, 398 P.2d 646 (1965).

We hold that the trial court correctly found that respondents established valid title by virtue of adverse possession of the property in question for the prescriptive period.

The Idaho Code prescribes the requirements for adverse possession, and perfection of title by such means, as follows:

"5–207. Possession under written claim of title.—When it appears that the occupant, or those under whom he claims, entered into the possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, or upon the decree of judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree or judgment, or of some part of the property under such claim, for five years, the property so included is deemed to have been held adversely except that when is consists of a tract divided into lots, the possession of one lot is not deemed a possession of any other lot of the same tract."

"5–208. Claim under written instrument—Possession defined.—For the purpose of constituting an adverse possession by a person claiming a title founded upon a written instrument, or a judgment or decree, land is deemed to have been possessed and occupied in the following cases:

1. Where it has been usually cultivated or improved.

2. Where it has been protected by a substantial inclosure.

3. Where, although not inclosed, it has been used for the supply of fuel, or of fencing timber for the purposes of husbandry, or for pasturage, or for the ordinary use of the occupant.

4. Where a known farm or single lot has been partly improved, the portion of such farm or lot that may have been left not cleared, or not inclosed, according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved and cultivated."

The evidence shows that in April 1949, Robert and Elaine Niemann held the record title to the entire Gregory Tract, and at that time they divided the tract into three parcels. Their two warranty deeds dated April 25, 1949, conveyed one parcel to the McKinnons and one to Dan Deshon. They conveyed the third parcel to Dan Deshon by warranty deed dated May 9, 1949. Uncontradicted testimony from Malcom McKinnon and Dan Deshon establishes that McKinnon and Deshon paid taxes on their respective holdings for at least five years following acquisition of the property. Deshon and McKinnon also testified that they substantially improved the property by clearing the land and repairing structures damaged by a flood of 1948. Examination of photographs taken of the property at the time of trial in light of testimony regarding the condition of the land after the 1948 flood, substantiates the trial court's finding that the record owners expended considerable sums for betterment of the tract.

As to the McGhee Tract, the parties stipulated that from 1952 through 1957, James E. Carey occupied the tract and paid all taxes thereon, and from 1957 through 1959 Carey's grantees, the McClellands, occupied and paid taxes on the same property. The evidence also shows that McClellands substantially improved the tract during their occupancy.

■ The evidence thus shows actual occupation of the properties by respondents or their predecessors in interest under color of title for the five-year prescriptive period, improvement of the property and payment of all taxes levied and assessed thereon according to law. Those circumstances constitute sufficient compliance with the statutory requirements for perfection of title by adverse possession. Calkins v. Kousouros, 72 Idaho 150, 237 P.2d 1053 (1951); Crandall v. Goss, 30 Idaho 661, 167 P. 1025 (1917); Coe v. Sloan, 16 Idaho 49, 100 P. 354 (1909).

■ Appellants contend that the statute of limitations, I.C. § 5–207, did not run against their interest as beneficiaries under the trust since at the time of the alleged breach of trust, appellants were incapable of bringing action against the alleged wrongdoers. Appellants rely upon I.C. § 5–213 which provides that "if a person entitled to commence an action for the recovery of real property, or for the recovery of possession thereof" is a minor child, the statute of limitations is tolled during the time of the disability.

■ Causes of action for wrongs against the trust property, however, vest in the trustee and not in the beneficiaries. Rule 17(a), I.R.C.P. See also I.C. § 5–303 originally included in Idaho's 1881 Code of Civil Procedure as Section 184. The trustee has title, possession, and powers of administration. If a stranger trespasses upon real property comprising assets of the trust, a cause of action arises in favor of the trustee, and the running of the statute of limitations is controlled by the ability of the trustee to sue. The period begins to run when the trustee knows, or ought to know of the unlawful act. If the trustee is barred, the beneficiary is barred, notwithstanding the beneficiary's personal disability at the time the action arose. Bogert, Trusts and Trustees § 954 (2d ed. 1962). See also Crittenden v. Dorn, 274 F. 520 (9th Cir. 1921); Spann v. First Nat. Bank of Montgomery, 240 Ala. 539, 200 So. 554 (1941); Patchett v. Pacific Coast Ry. Co., 100 Cal. 505, 35 P. 73 (1893); Restatement (Second) Trusts § 327 (1959); Annot. 2 A.L.R. 41 (1919).

Patchett v. Pacific Coast Ry. Co., supra, appears in point with the instant case. In that case the husband conveyed property to his wife in trust, as an incident to a divorce settlement. The purpose of the trust was to subject the property to the support and education of minor children, and the trustee had no power to convey the res of the trust. The wife-trustee however, conveyed in 1881 to a third party a

right of way across the property. The defendant shortly thereafter purchased that interest from the third party, entered the property, constructed improvements thereon, and paid taxes continuously for the prescriptive period. The ex-husband succeeded to the trusteeship in 1891 and sued as trustee to quiet title against the defendant. At time of the action, the children and beneficiaries of the trust were 14, 17, 21 and 22 years of age. The court discussed the issue of limitation as follows:

" * * * Here the findings show that everything was done by the defendant necessary to create a prescriptive right, if such right could be acquired against the minor children, for whom the title to four-fifths of the property was held in trust. Our Code provides that an executor or administrator, or trustee of an express trust, may sue without joining with him the persons for whose benefit the action is prosecuted. Code Civil Proc. § 369. There has been some conflict in the decisions as to the rights of minors in cases like this, but the weight of authority seems to be contrary to the conclusion of the court below. In a note to Moore v. Armstrong, 10 Ohio 11, 36 Amer.Dec. 68, it is said: 'There is also diversity of opinion on the question as to how far the rights of an infant are affected when his property is in the hands of a trustee, * * * and the tendency of the decisions is to support the position that when the right of action vests in an * * * trustee, who is under no legal disability, the statute will commence to run despite the disability of the minor, and, if the claim is lost by the neglect of the representative to sue, the minor is barred;' citing numerous cases. So in Perry, Trusts, (4th Ed.) § 858, it is said: 'It was said in one case that "forbearance of the trustees in not doing what it was their office to have done should in no sort prejudice the cestui que trust;" that is, that if the trustee does not bring an action to recover the estate within the statutory period the cestui que trust is

not barred. But this is not the rule of law. Lord Hardwicke said: "The rule that the statute of limitations does not bar a trust estate holds only between cestui que trust and trustee, not as between cestui que trust and trustee on one side, and strangers on the other; for that would make the statute of no force at all, because there is hardly any estate of consequence without such trust, and so the act would never take place. Therefore, where the cestui que trust and his trustee are both out of possession for the time limited, the party in possession has a good bar against them both." * * * Where the trustee is barred, so is the cestui.'" (35 P. at 75)

Cal.C.C.P. § 369 referred to in the aforesaid quotation is of similar import as I.C. § 5–303 and I.R.C.P. 17(a).

We are cognizant of the fact that Veneta Jones appears principally liable for the alleged breach of trust insofar as she failed to obtain judicial approval in conveying the McGhee Tract and neglected to account for the proceeds of that sale. Where the trustee collaborates with a third party transferee to defeat the trust, the theory that the trustee protects his beneficiary against wrongs committed by third persons to the *res* becomes unrealistic and unequible in application. The trustee, far from acting to preserve the rights of the beneficiary, turns against the beneficiary and subverts his interest. Consequently, in most jurisdictions to consider the question, the general rule yields to this exceptional situation, and the statute of limitations does not run against beneficiaries under a personal disability where the trustee and third party transferee fraudulently violate the trust agreement; in the beneficiary's or successor trustee's action to recover the trust assets from the third party transferee, the statute of limitations is not a defense. Hammons v. National Surety Co., 36 Ariz. 459, 287 P. 292 (1930); Elliott v. Landis Mach. Co., 236 Mo. 546, 139 S.W. 356 (1911); Schofield v. Cleveland Trust Co., 149 Ohio 133, 78 N.E.2d 167 (1948); Hall

v. Windsor Savings Bank, 97 Vt. 125, 121 A. 582, 124 A. 593 (1923); Goodwin v. American Surety Co. of New York, 190 Wash. 457, 68 P.2d 619 (1937); Bogert Trusts and Trustees § 955 (2d ed. 1962); Restatement (Second) Trusts § 327 (1959).

However, the exception alluded to in appellants' argument does not extend to the present circumstances for two reasons:

■ First, appellant children received fair representation subsequent to the alleged breach of trust by Veneta Jones. The conveyances of trust property occurred not later than October 1947, the time of Veneta Jones' removal as trustee and the appointment of Tom Jones as successor. Tom Jones as trustee acquired plenary authority under the order of court to receive and apply all funds forthcoming from the sale of trust property. If Mrs. Jones and the transferees of the Gregory and McGhee Tracts contravened in any way the terms of the trust, the cause of action accrued to Tom Jones as trustee. There being no suggestion in the record that Tom Jones participated in the alleged breach, and no question of his capacity to sue on behalf of the trust, his failure to bring suit within the statutory period conclusively bound the minor beneficiaries. Hart v. Citizens' Nat. Bank, 105 Kan. 434, 185 P. 1, 7 A.L.R. 933 (1919).

■ Secondly, the stated exception only applies where the third party transferees knowingly participated in the breach of trust. There is no evidence to show that respondents acted in collusion with Veneta Jones in the alleged breach of trust. Respondents Payne, Carey and McClelland were remote grantees of the McGhee Tract, as were respondents McKinnon, Kennedy, Schedler, Deshon, Nieman, Bandelin, and the State of Idaho, of the Gregory Tract. Each conveyance involved full consideration for the value of property conveyed. Respondents not being guilty of fraud, collusion, or knowing participation with the trustee in the alleged breach of trust, were entitled to assert the statute of limitations as a defense to appellants' action. Veitch v. Woodward Iron Co., 200 Ala. 358, 76 So. 124 (1917); Ewing v. Shannahan, 113 Mo. 188, 20 S.W. 1065 (1892); Cockshaw v. Guaranty Trust Co. of New York, 282 App.Div. 688, 122 N.Y.S.2d 434 (1953); Smilie v. Biffle, 2 Pa. 52, 53 (1845); Restatement (Second) Trusts § 327, Comment i (1959); Bogert, Trusts and Trustees § 955 (2d ed. 1962).

■ Appellants contend that constructive notice of the terms of the trust imposed upon all transferees of the tracts the onus of knowing participation in the breach of trust. That argument was expressly rejected in Ewing v. Shannahan, supra, wherein the court stated:

"It is suggested that defendant purchased with knowledge of the trust, because the trust deed was recorded, and that he did purchase with constructive notice must be conceded. The fact, however, that he had such notice did not prevent the statute of limitations from running. If that were so, the statute would cease to be one of repose. The statute will run in favor of even a wrongdoer. There can be no claim that defendant was guilty of fraud. On the contrary, the proof shows beyond all doubt that he paid full value for the property, believing he had acquired a perfect title, and with that belief made improvements thereon to the amount of $20,000." 113 Mo. at 202, 20 S.W. at 1069.

From the foregoing it follows that respondents, claiming record title to the tracts in question, acquired indisputable title to their respective holdings by virtue of adverse possession, and that the trial court correctly quieted title on that basis.

Appellants' attempt to impose liability upon respondents George and Genevieve Gregory, was ancillary to the quiet title action, since the Gregorys disclaimed any present legal interest in the property constituting the subject of this action. By generous construction of appellants' contentions at trial and on this appeal, the

alleged liability arises from the Gregorys' failure to give reasonable notice prior to forfeiture of the Jones' purchase agreement, to secure a valid judicial approval of the re-sale of the Gregory Tract, and adequately to compensate the trust for the lost equity in the Gregory Tract.

That alleged liability to the trust entitled Tom Jones, as successor trustee, to sue for damages or for the recovery of the property from the Gregorys. For ten years the beneficiaries' legal representative neglected without reasonable justification to bring such an action. The Gregorys and other respondents are now entitled to the protection and repose afforded by the statute of limitations.

Judgment affirmed. Costs of respondents.

McQUADE and McFADDEN, JJ., and DONALDSON and TOWLES, D. JJ., concur.