CASE 86—PETITION EQUITY—January 5.

# Willson v. Louisville Trust Co., Etc.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. TRUSTS AND TRUSTEES—ESTOPPEL.—Where one conveyed to another in trust for his wife during her life and in remainder to their children, a large tract of land, and subsequently joined with the trustee in a conveyance of a small part thereof with warranty of title, the proceeds of which were used in redeem-

ing a larger and more valuable part of the same land embraced in the trust, which had been sold under execution before the trust deed was created, the infant remaindermen being liable on their father's warranty, and the proceeds of the smaller tract having been used to redeem the larger tract of greater value, are estopped to claim the smaller tract.

2. LIMITATION OF ACTION—INFANT'S ADVERSE POSSESSION—TRUSTS.—The rule that when a .trustee holds the legal title to real estate which is barred by the statute of limitations, an equitable interest depending upon it will also be defeated although the *cestui que trust* be an infant, applies, although the person who holds the land adversely is a constructive trustee by reason of having purchased· from the actual trustee with knowledge of the trust and his violation of it; while the possession of a trustee where the trust is constituted by an act of the parties will be considered the possession of the *cestui que trust* and no length of possession as such will bar the beneficiary, but if a party is to be constituted a. trustee by decree of a court founded on fraud, or the like, his possession is then considered adverse, and the statute of limitations will run and be a bar.

BURTON VANCE, FOR APPELLANT.

1. Where a trustee by his own act—his own formal deed—estops himself from suing to recover the possession of real estate belonging to the trust, limitation will not commence to run against the remainderman in the trust, until the right of possession is in some one who has not by his own fraudulent act estopped himself from asserting their right to it. Wood on Limitation, sec. 208, page 428, Ed. of 1883; Parker v. Hall, 2 Head, 641 (Tenn.)

2. Roth, who claims under the void deed from the trustee, had actual notice of the trust and of the want of power in the trustee to convey, and being thus a party to the fraud upon the remaindermen, he holds the property as trustee for them, and is estopped from relying upon the statute of limitations as against them. Perry on Trusts, sec. 217, and 860; Pugh v. Bell, 1 J. J. M., 403; Liggett v. Ward, 2 J. J. M., 149.

3. The remaindermen are not estopped from claiming the thirty-three acres because they received the benefit of the sale thereof, and it was used in relieving the remainder of the trust estate from valid encumbrances; this was not done upon their request, nor upon the request of any one who was in law or equity or in fact entitled to represent them, or estop them.    Johnson v. Stuart, manuscript opinion Mar. 20, 1879.

O. A. WEHLE, FOR APPELLEE.

1. Persons who have received from the vendor and warrantor of the title, by gift or devise property exceeding; in value the property they seek to recover, are estopped from recovering. Gudgell v. Tydings, 10 Ky. Law Rep., 373; Tydings v. Gudgell, 13 Ky. Law Rep., 896 distinguished from Johnson v. Stewart, M. S. Op., Mch. 20, 1879.

2. When limitation has run against the trustee who held the legal title in fee, the *cestui que trust* is barred, though his equitabl᾽ interest has not yet come into possession, or though he may have been under disability. Edwards v. Woolfolk, 17 B. M., 376; Barclay v. Goodloe's Exr., 83 Ky., 500.

3. This rule applies though the trustee may have joined in the conveyance under which the defendant claims, because that fact does not estop the trustee from suing. Ewing v. Shanahan, 113 Mo., 196; Meeks v. Olphers, 100 U. S., 564; Wingfield v. Virgin, 51 Ga., 139; Somlie v. Biffle, 2 Pa. St., 52; Chase v. Cartwright, 53 Ark., 366. Contrary only: Parker v. Hill, 2 Head, 641 (1859).

4. Limitation runs in favor of a person who is only constructively trustee—as a purchaser from a trustee. Pomeroy Eq. Sec. 1044 and note; Knox v. Gye L. R. 5, H. L. 656; Edwards v. University, 1 Dev. & B. Eq., 325; Christmas v. Mitchell, 3 Ired. Eq., 535; Forman v. Brooks, 9 Pick., 212.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

Murray Phillips, a citizen of Jefferson county, owned a tract of 367 acres of land by devise from his father, located near the city of Louisville. In December, 1860, 100 acres of this land, on the southeast corner of the farm, was sold under execution to James Rudd, a brother-in-law of Phillips, for $4,927.74, less than two-thirds of its appraised value. On the 9th day of February thereafter Phillips conveyed the entire tract of 367 acres to his wife's brother, John A. Shrader, in trust for the use and benefit of his wife and her children by the grantor, to be used and controlled for their sole use and benefit, which trust was accepted by Shrader, in writing, and a short time thereafter Phillips left the State and joined the Confederate army.

In the meantime, the year for the redemption of the 100

acres sold under execution having expired, the marshal exe-
cuted a deed of conveyance to the purchaser, James Rudd,
for the 100 acres.   In 1863 Murray Phillips secretly visited
his family, and while at his home executed a power of attor-
ney to his wife, authorizing her to mortgage, sell and convey
the land to raise the money to pay off his debts as his agent
and attorney in fact.

On the 13th day of April thereafter John A. Shrader, the
trustee, sold to Frederick Roth 33.07 acres out of the 367-
acre tract which had been conveyed to him in February by
Phillips (which piece did not constitute a part of the 100
acres which had been sold under the execution and pur-
chased by Rudd), in consideration of $4,500 cash in hand
paid, and conveyed same by general warranty deed, in which
James Rudd and Murray Phillips united.   The vendee, Roth,
took immediate possession of this 33.07 acres of land, and he
and his heirs at law have held the continuous, uninterrupted
and adverse possession of it down to the institution of this
suit.   The purchase money paid by Roth was paid over to
Rudd by his consent to redeem the tract of 100 acres which
had been bought by him at the execution sale, and this 100
acres was restored to the trust estate, and was occupied by
Phillips and his wife until his death in 1887, and after his
death his wife and children continued to occupy it until her
death in 1895.   The children of Murray and America Phil-
lips at the date of the trust deed were all infants, and a num-
ber of them were born subsequently to its execution.

No claim has ever been made by the children of Murray
and America Phillips to this 33.07 acres of land, or to any
interest therein, but after the death of the father the residue

of the tract was partitioned between the widow and surviving children without any regard to the portion sold Roth.

This suit was instituted by the heirs of the vendee, Roth, after his death, for a sale and division of the property, and the trust company, who held a mortgage upon the tract of 33.07 acres, was made a defendant. By proper proceedings it was sold to satisfy the mortgage debt due the trust company and appellant became the purchaser at this sale; and after report thereof by the master he filed exceptions to its confirmation, upon the ground that the deed executed by the trustee, Shrader, to Roth was void for lack of power in the grantors to convey, the trust deed to Shrader having failed to confer upon him the power to dispose of any part of the property conveyed to him, and that the title was in the children of Murray and America Phillips under the original conveyance, they never having been legally divested of their title.

Appellant's motion was resisted by appellee, who insists that, even if, as contended, Roth acquired no title through the deed from Shrader to the land in contest, still his title was good as against the children of Murray Phillips, first, because they are estopped from laying claim to the 33.07 acres of land because the proceeds of the sale thereof were used to redeem a much larger and more valuable tract for their benefit; and, second, because the claim of the children, if they should ever seek to enforce it, was barred by the lapse of time and the statute of limitation.

Appellant by way of reply insists, first, that the vendee, Roth, who took under the void deed from the trustee, Shrader, had actual notice of the trust and want of power

in the trustee to convey, and thus became a party with the trustee to the wrong done the remaindermen, and that he is estopped thereby from relying upon the statute of limitation against any claim which might be asserted by the children of Murray Phillips; and, second, that in this case Shrader, having estopped himself from suing for the recovery of the property by the execution of the deed to Roth (thus uniting with the purchaser Roth in a breach of his trust), the beneficiaries are not affected by the statute, and may maintain their action at any time within the statutory period after the death of the life tenant for the recovery of the land.

It is evident that in the conveyance to Roth by Shrader, the trustee, in which the donor and other grantors united, they acted in the utmost good faith, and that the sale was necessary to protect the trust property and the interest of the beneficiaries under the trust deed. The money advanced by Rudd on his purchase of the 100 acres had to be repaid in order to redeem the larger and more valuable tract, and as the children of America and Murray Phillips were the sole beneficiaries of this transaction they certainly would not in a court of equity be allowed to recover the land sold Roth, which he paid for in good faith and the proceeds of which had been so advantageously used to redeem a part of the property covered by the trust which had been alienated prior to the date thereof. The conveyance to Roth was united in by the father, the donor of the land in question, with a warranty of title and certainly to the extent of the value of the 100 acres redeemed by the trustee, which was donated by their ancestor, the children would be liable on this warranty (Gudgell v. Tydings, 10 Ky. Law Rep., 737, and

same case, 13 Ky. Law Rep., 869). And as there seems to be no question that the 100-acre tract redeemed is of far greater value than the 33.07 acre tract alienated, this would appear to afford complete protection to the purchaser against any claim on the part of the children of the grantor, Phillips.

It has been expressly held by this court that when a trustee holds the legal title to real estate which is barred by the statute of limitation, the equitable interests dependent upon it will also be defeated, notwithstanding the *cestui que trust* is an infant (Edwards v. Woolfolk, 17 B. M., 367; Coleman v. Walker, 3 Met., 67, and Barkley v. Goodloe, 83 Ky., 500). And this seems to be the general rule of construction.

The question in this case is, does this rule apply where the trustee has joined in the conveyance under which the vendee claims, and does the fact of his having united in such a conveyance estop him from any proceedings to recover, notwithstanding such action on his part?

It seems to be conceded that the effect of the trust deed was to vest in America Phillips a life estate in the property therein conveyed and a contingent remainder in her children.  And it is argued that no right of action accrued to these children until the death of their mother in 1895; and the contention of appellant seems to be supported, to some extent, by Woods in his Limitation of Actions, 2d edition, section 208. He says: "Where the legal title of property is vested in a trustee who can sue for it, and he fails to do so within the statutory period, an infant *cestui*, who has only an equitable interest will also be barred. But the rule is other-

wise when the title is vested in the infant or cast upon
him by operation of law." And this rule appears to have
been follcwed by the Supreme Court of Tennessee in the
case of Parker v. Hall, 2 Head, 641, where the guardian of
minor children purchased slaves with the money of his
wards and took a bill of sale in his own name as guardian,
which was registered. He sold the slaves while his wards
were minors and died insolvent. Thereafter the wards,
one of them still being under age, brought a suit for the re-
covery of the property, and the court held that the rule that
when a trustee is barred all the beneficiaries are also bar-
red, did not apply, because the trustee, the holder of the
legal estate, had estopped himself from suing by making a
bill of sale to the purchaser, and because he had united
with the trustee in a breach of the trust, holding in sub-
stance that the trustee had acted fraudulently.

Perry on Trusts, 2d edition, section 857, quotes approv-
ingly this decision of the Tennessee court, but more recent
decisions of courts of last resort take the contrary view. In
the case of Meeks v. Olphers, 100 U. S. S. C., 566, the court
say: "Whilst it must be conceded that no right of action
existed in the heirs of Harlan until the order of distribu-
tion, the reason of this is that the right of action to recover
possession of the lots wrongfully held under the invalid pro-
bate sale was in the administrator. He was the representa-
tive of the rights of the heirs and of the creditors of the es-
tate, and as such had the same power to sue for and recover
the lots as if he had been the intestate himself. Not only was
it his right, but it was his exclusive right and his duty, and
for any failure to perform this duty he laid himself liable
[34]

to the heirs or to any one else injured by the failure. Nor can it be said this right or this duty to sue for and recover possession of the lots was lost or abridged by his sale to the defendants. Instances are numerous of persons making sales that are invalid avoiding them by the very act of bringing an action of ejectment. Such are the cases of infants and married women who have made conveyances and received the consideration, whose acts are void or voidable by reason of infancy or defective acknowledgment. * * * If the administrator can by such action avoid his own irregular or void sale the reason for limiting the time within which it should be done is as strong, or perhaps stronger, than it is against another," the court further holding "that the right of action on the title which the plaintiff now asserts was in the administrator, and the statute, therefore, ran against him and against all whose rights he represents; that whatever doubt may have existed at one time on the subject, there remains none at the present day; that wherever the right of action in a trustee is barred by the statute of limitation, the right of the *cestui que trust* thus represented is also barred," referring with approval to the cases of Smilie v. Bifle, 2 Pa. St., 52; Couch v. Couch, 9 B. M., 160; Rosson v. Anderson, 9 B. M., 423, and Darnell v. Adams, 3 B. M., 73. And this rule of construction has been upheld in the case of Ewing v. Shanahan, 113 Mo., 196; Wingfield v. Virgin, 51 Ga., 139, and Chase v. Cartright, 53 Ark., 366.

In this case the right of action accrued to the trustee who held the legal title for the benefit of all those beneficially interested as soon as Roth took possession. The vendee has

admittedly been in possession of the land for more than thirty-two years, holding adversely, both to the trustee and the *cestui que trust*, and has obtained by the statute of limitation a complete title which can not be disturbed. Any other construction would destroy the purpose and intention of the statutes, which are statutes of repose; and the rule "that if one purchases property of a trustee with notice of the trust, shall be charged with the same trust in reference to the property as the trustee from whom he purchased, even if he pays a valuable consideration, with notice of equitable rights of third persons, shall hold the same subject to the equitable interests of such persons (which is so strongly invoked by the appellant herein), does not apply to a purely constructive trust, and such a person may plead the statute, though in other respects equity will treat him as if he were a trustee.

Mr. Pomeroy, in his work on Equity Jurisprudence, section 1070, in speaking of constructive trusts, says: "They arise when the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the person who is equitably entitled, when the property thus obtained is held in hostility to his beneficial rights of ownership. * * * And are raised by the doctrines of equity for the purpose of working out justice in the most efficient manner where there is no intention of the parties to create such a relation and where there is no express or implied written or verbal declaration of trust." But in the same section the author goes on to say: "In applying the principle of constructive trusts care should be taken to distinguish between actual trusts and those relations which are only

trusts by way of metaphor; between persons who are true trustees holding legal title for a beneficial owner and those who simply occupy a position which is analogous in some respects to that of a trustee," citing in support of this position the case of Rolfe v. Gregory, 4 De Gex, J. & S., 576, 579, and Knox v. Gye, L. R., 5 H. L., 656, 675. And whilst undoubtedly there has been a difference in the conclusions of the courts as to what extent this doctrine of constructive trusts should be carried, it seems to us that the sound and true rule was laid down in the case of Edwards v. University, 1 Dev. & B. Eq., 325, where the court said: "As respects trusts the distinction in equity is, that if the trust be constituted by the act of the parties, the possession of the trustee is the possession of the *cestui que trust*, and no length of possession as such will bar, but if a party is to be constituted a trustee by decree of a court of equity, founded on fraud or the like, his possession is then considered adverse, and the statute of limitation will run and be a bar." And this doctrine was upheld in the case of Chrismas v. Mitchell, 3 Ired. Eq., 537, where the court said: "M tche l, the purchaser from a trustee, is not a trustee created by the act of the parties, but declared so by equity, in which case the statute is a bar." (Wood on Limitations, section 58, and Brooks v. Brooks, 9 Pickel, 212.)

In the manuscript opinion in the case of Catherine Johnson v. Mary Stewart, handed down on March 20, 1879, the facts are clearly distinguished from those in the case at bar. There the equitable life tenant voluntarily erected a building on one of the lots which belonged to the trust for his own advantage and afterwards brought suit against the remain-

dermen, asking the court to re-imburse him for his expenditures by conveying to him in fee another piece of property belong to the trust, which was granted, and which on appeal was reversed. His expenditures might have been beneficial and necessary, and they might not have been, and in that case there was no deed from the donor warranting the title; whilst in this case it was absolutely necessary to make the sale in order to realize the money to redeem a much larger and more valuable tract of land.

Under the facts of this case no chancellor would have hesitated, if appealed to in advance, to authorize and approve the sale. We, therefore, conclude that, notwithstanding the fact that Shrader, the trustee, executed the conveyance to Roth, the continuous, uninterrupted and adverse possessio. of the property by the vendee and his heirs for more than thirty-three years operates as a bar, not only as against the trustee, but also against the children of Murray Phillips.

The judgment is therefore, affirmed.